UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**
          **Plaintiff,**

-vs-                                      Case No. 22-20519
                                              Hon. Laurie J. Michelson

**SHATONNIA KIMBROUGH**
          **Defendant**

_____

## DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE

Defendant Shatonnia Kimbrough submits this sentencing memorandum in support of her sentencing scheduled for March 21, 2025, at 10:00 AM.

Ms. Kimbrough pled guilty to Count 2 of the First Superseding Indictment charging her with aiding and abetting the offense of kidnapping, 18 U.S.C. §1201(a)(1) and 18 U.S.C. §2.

Probation has calculated defendant with a Category 2 criminal history and a guideline range of 151 to 188 months. The Rule 11 agreement sets forth that the Court will determine the appropriate guidelines range. (ECF 277).

1

Counsel submits that scoring one point for defendant's juvenile court conviction for receiving and concealing a stolen motor vehicle (PSR Paragraph 42), and one point for a fleeing and eluding conviction that was dismissed under HYTA (PSR Paragraph 43), overstates her criminal history and results in an advisory guidelines "greater than necessary" under 18 U.S.C. §3553. Ms. Kimbrough was a passenger in the fleeing and eluding incident.

It is permissible for the court to rely on the policy statement in USSG §4A1.3, in addition to the relevant §3553(a) factors in reducing a defendant's criminal history category. *United States v. Williams,* 432 F.3d 621 (6th Cir.2005).

Defendant further requests the court take into consideration Ms. Kimbrough's young age, and her extraordinary history of abuse, neglect, and sexual trauma, to grant a substantial downward variance.

**Relevant 3553(a) Factors**

18 USC 3553(a) requires the Court to "impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph 2. Section 3553(a) states that such purposes are:

    (A)    to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense.
    (B)    to afford adequate deterrence to criminal conduct.

(C) to protect the public from further crimes of the defendant; an
(D) to provide the defendant with needed educational or vocational training, medical care, or other correction treatment in the most effective manner.

Section 3553(a) further direct sentencing courts to consider (1) the nature and circumstances of the offense and the history and character of the defendant: (3) the types of sentences available; and (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

It is well settled that the guidelines are not a mandatory constraint on this court's sentencing discretion. *United States v. Booker*, 543 U.S. 220, 160 L.Ed. 2d 621, 125 S.Ct. 738 (2005). Guideline calculations are advisory and are only one of the factors to consider when imposing a sentence "sufficient but not greater than necessary to comply with Section 3553 purposes. *Gall v. United States*, 552 U.S. 38, 128 S. Ct.586, 596 (2007). Post *Booker* case law requires a sentencing court to tailor the sentence in light of other statutory concerns. *United States v. Collington,* 461 F 3f 805 (6th Cir. 2006). No single factor than any other §3553 (a) factor should be used in arriving at an appropriate sentence.

There is no limitation on what the court can consider at sentencing. 18 U.S.C.§3661. A sentencing court is free to reject a guideline sentence after

due consideration of the §3553 (a) factors, and "may not presume that the guideline range is reasonable." *Gall v.United States,* 552 U.S. 38, 58 (2007).

**History and Characteristics of the Defendant-Departure/Variance**

    **Prior and subsequent conduct**

It is respectfully requested that Miss Kimbrough's prior contact with the criminal justice system, as well as subsequent incidents at the Livingston County Jail detailed in the government's sentencing memorandum, should be understood and considered in context of her severely disadvantaged and abusive childhood as well as her youth.

Counsel also submits that the racial animus prevalent among the predominately non-white Livingston County inmate population has contributed to the subsequent jail incidents. Defendant's requests for transfer to a less hostile institution had gone unheeded.

Dr. Swerdow-Freed's evaluation report (EX. A) notes that violent aggressive illegal behavior is a common problem of individuals with a history of extreme adverse childhood experience and PTSD. His testing specifically found that Ms. Kimborugh was not feigning or exaggerating the effects of her abusive history and PTSD.

To Defendant's credit, she has attempted to better herself during her

4

two plus years of incarceration at the Livingston County Jail. She has earned her GED (PSR Para. No. 80), attended group mental health therapy sessions, completed many hours of educational and self-improvement courses, and earned many self-study Bible Course certificates. (Exhibits C& D).

### Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment.

Miss Kimbrough fully understands and acknowledges that her conduct and participation in the offense is unacceptable. She is remorseful and accepts responsibility for her actions.

With respect to defendant's participation in the offense, it is of import to note that she was not a member, but merely an "associate"…"through familial relationships", to some of the persons in the so called 1125 gang. (PSR Para No. 12). Furthermore, Kimbrough's culpable conduct was limited to the beatdown of the victim at co-Defendant Cortez Blake's Trinty Street residence. She did not participate in any shooting, did not have any firearms, and was not involved in the prior planning or kidnapping of the victim to an abandoned house.

After the victim had been taken to Cortez Blake's Trinity Street house, Miss Kimbrough was telephoned at her work as a security guard and

5

asked to participate in a beatdown of the victim to obtain information regarding a prior shooting. Kimbrough agreed and was picked up from work and driven to the Blake residence, where she participated in the beating captured on video. Defendant was then driven back to work before the victim was dropped off at a vacant house.

**Departure/ Variance**

A. **Defendant's youth**

Ms. Kimbrough is now only 21 years old. She was just 19 at the time of the offense.

USSG §5H1.1 was amended and revised in 2024 providing that a downward departure may be warranted in cases in which the defendant was youthful at the time of the instant offense.

In *Miller v. Alabama*, 567 U.S. 460, 471(2012), the Court noted that juveniles and young adults are different. "[D]evelopments in psychology and brain science continue to show fundamental differences between juvenile and adult minds...in "parts of the brain involved in behavior control". The prefrontal cortex of the brain does not reach "full adult maturity" until "the early to mid-20s". Young people lack maturity and have "an undeveloped sense of responsibility, leading to negative influence and outside pressures,

6

including from their family and peers." [Their "traits are less fixed and actions less likely to be evidence of irretrievable depravity." *Id.* at 471.

The Court has also specifically recognized that a defendant's youth and immaturity are not an inconsequential consideration in sentencing. See *Gall v. United States*, 552 U.S.38, 58 (2007). The court may consider age as part of the history and characteristics of the defendant as part of a variance under § 3553 (a) factors. *United States v. Sherrill*, 972 F.3d 752, 758 (6th Cir. 2020).

B. **Disadvantaged childhood and history of abuse**

Shatonnia Kimbrough has suffered and experienced extreme, continuous and pervasive abuse, mistreatment, abandonment and neglect, resulting in mental health issues.

As fully outlined in Dr Swerdlow-Freed's report (Exhibit A), and the PSR, Defendant has a history of suicide attempts, abandonment, and drug abuse. She was a victim of rape at ages 7 and 12, and as a 16-year-old girl. She was sexually abused at least twice by male babysitters and by a female relative. She was beaten by her mother's ex-boyfriend and forced to perform sex acts by cousins. She has two suicidal attempts at ages 12 and 13, and ideation at age 17. She gave birth to her son, Sha'marion Kimbrough, at age

7

16 which forced her to drop out of school. She has attained her GED while incarcerated.

All of Defendant's immediate family have been incarcerated. Her biological father was incarcerated for much of her life. Her mother was incarcerated at various times. She has lived intermittently with various relatives and for a time was placed with a foster family. She felt neglected and angry about her impoverishment. Basic utilities were often shut off and she had to sleep on the floor. At times her basic needs were not provided, forcing her to steal food and use neighbors' hoses for water.

Mental Health records document Ms. Kimbrough's history of anxiety, depression requiring prescriptions for antipsychotic medication. Testing by Dr. Swerdlow-Freed has resulted in a diagnosis of post-traumatic stress disorder (PTSD).

Dr. Swerdlow-Freed's testing found that Ms. Kimbrough was not feigning or exaggerating the effects of her history. The doctor points out that violent angry aggressive illegal behavior is a common problem of individuals with a history of adverse childhood experiences and PTSD.

The doctor notes that |defendant "seems to have motivation to change and might make some meaningful changes if provided with mental health treatment". To that point, it is noteworthy that defendant has been seeking

and participating in such limited group mental health therapy and educational programs offered at the Livingston County Jail (Exhibits C & D).

In *United States v. Roe* 976 F.2d 1216 (9th Cir. 1992), the court held that psychological effects of childhood abuse may permit a downward departure in extraordinary circumstances. The Ninth Circuit found the district court erred in not finding Roe's extensive history of abuse extraordinary. "It requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens." *Santosky v. Kramer*, 455 U.S. 745, 789 (1982) (Rehnquist. J dissenting).

In *United States v. Campbell*, 434 Fed Appx 507 (2011), the court recognized that mental health issues can be a factor, and that a psychologist's report can be used as a basis for downward departure.

USSG §5H1.3 provides that "Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines."

Per 18 USC§ 3553, no limitation shall be placed on the information concerning the background, character, and conduct that may be considered for purposes of sentencing." Our courts recognize that disadvantaged youth, neglect, abuse, or lack of guidance as a youth as a factor for sentencing below the guideline range.

## CONCLUSION

Shatonnia Kimbrough regrets her actions in this incident and fully looks forward to the day when she can be reunited and actively involved with her son.

Her history of abuse, depravation, disadvantages, abandonment and neglect are without question extreme and push the end of the spectrum. They have had a severe and negative impact on her personality development and functioning and resultant mental health issues.

It is suggested that with Defendant's ongoing maturity, coupled with benefits derived from the more advanced and intensive mental health therapy programs offered by BOP and probation upon supervised release, Ms. Kimbrough will be able to gain an understanding of and attain the life skills and tools to control and rid herself of her demons.

Defendant respectfully requests imposition of a sentence that is a substantial departure and downward variance from the guidelines

        Respectfully submitted,

        *s/Alvin C. Sallen (*P23797)
        Attorney for Defendant
        30100 Telegraph Rd., Suite 360
        Bingham Farms, MI 48025
        (248) 705-1199
        asallenlaw@gmail.com

Dated: March 14, 2025.

## **CERTIFICATE OF SERVICE**

The undersigned affirms that on March 14, 2025, he electronically filed the foregoing document with the Clerk of the Court utilizing the ECF sys which will notify counsel of record.

        *s/Alvin C. Sallen*